IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


RICHARD JAMES RISOR                                                    PLAINTIFF


        v.                              CIVIL NO. 11-5003


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                        DEFENDANT


<u>**MEMORANDUM OPINION**</u>

        Plaintiff, Richard James Risor, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  <u>See</u> 42 U.S.C. § 405(g).

**I.      Procedural Background:**

        Plaintiff protectively filed his current application for DIB on August 5, 2008, alleging an

inability to work since July 2, 2006,[1] due to bipolar disorder, anxiety, depression, and a sleep

disorder.  (Tr. 97).  An administrative hearing was held on January 6, 2010, at which Plaintiff

appeared with counsel and testified. (Tr. 29-47).

        By written decision dated April 1, 2010, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 16).

_____

[1] Through his attorney, Plaintiff amended his onset date to July 31, 2008.  (Tr. 14, 35, 182 194).

Specifically, the ALJ found Plaintiff had the following severe impairments: a mood disorder. However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations except that [t]he claimant can perform work where interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote, with few variables and little judgment required. Supervision required is simple, direct, and concrete.

(Tr. 18). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a production worker, a maid/housekeeper, and a packer. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 5, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 3). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8,9).

## II.    Evidence Presented:

At the administrative hearing held before the ALJ on January 6, 2010, Plaintiff, who was fifty-three years of age at that time, testified that he lived with his girlfriend on his parents property. (Tr. 34). The record revealed that Plaintiff had worked as a landscaper.

Prior to the relevant time period, Plaintiff sought treatment for mental impairments, as well as alcohol abuse. (Tr. 224-233, 238-289).

The medical evidence during the relevant time period reflects the following. On July 17, 2008, Plaintiff was seen by Dr. Larry R. Taylor who noted Plaintiff was seen in the walk-in clinic

AO72A
(Rev. 8/82)

requesting a medication refill. (Tr. 235-237). Plaintiff offered no complaints and reported he was regular with his medications, and wished to continue them as previously prescribed. Dr. Taylor noted Plaintiff was friendly and cooperative, and Plaintiff indicated that he would schedule an appointment with Dr. Stillwell. Plaintiff's prescriptions for Olanzepine, Trazadone and Amolodine were renewed.

On September 10, 2008, Plaintiff was seen in the mental health clinic for a medication review. (Tr. 462-467). Dr. Robert Stillwell, a psychiatrist, noted that Plaintiff had tried to "skip" the sleeping medication, but then he could not sleep. Plaintiff reported that the Fluoxetine (Prozac) had been helping before he had run out of the medication in June. Plaintiff reported that he was planning on building a home near his parents in Huntsville, Arkansas. Dr. Stillwell noted that Plaintiff's mental status was calm and clear without evident thought disorder. Plaintiff was diagnosed with:

I.      *Bipolar disorder by history (SC for Major Depression)
        Alcohol abuse in remission
II.     none noted
III.    hypertension, mild
        no known drug allergies
IV.     insomnia
V.      gaf - 55

(Tr. 466). Plaintiff was prescribed medications and instructed to return in one year.

On October 14, 2008, Plaintiff was in for his annual physical. (Tr. 455-459). Dr. Marlan L. Rhame noted that Plaintiff's bipolar disorder was being followed by Dr. Stillwell. Plaintiff reported that he continued to have some problems with sleeping, but that his right elbow and hip pain had resolved. Plaintiff reported that he quit working as a landscaper because the driving became too stressful. Plaintiff reported that he had helped his father build a garage, and that he

-3-

still mowed lawns.  Plaintiff reported that his bipolar disorder seemed to be doing okay, but that he had occasional manic episodes.  Plaintiff's medications were refilled, and it was suggested that Plaintiff make an appointment with Dr. Stillwell regarding his insomnia.  Treatment notes indicated that Dr. Stillwell would not increase Plaintiff's dose of Trazadone for the insomnia.

On October 24, 2008, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Terry L. Efird.  (Tr. 219-223).  Plaintiff reported that he felt hyper some days, and then withdrawn other days.  Plaintiff reported that he thought he had been more manic recently, but Dr. Efird noted that Plaintiff did not "appear to be manic, clinically."  Plaintiff reported that most of the time he was okay, as long as he was not around a lot of people.  Plaintiff reported he had been discharged from the Navy secondary to being diagnosed with Bipolar Disorder.  Subsequent to his discharge, Plaintiff reported that his symptoms had fluctuated, and that he had been off and on psychiatric medication.  Plaintiff reported during the past year he had more difficulty driving, dealing with people, and coping with pressure.  Plaintiff reported he had been admitted for inpatient treatment three or four times, with the most recent admission being in December of 2007. At that time, Plaintiff reported he had been drinking excessively and was manic.  Plaintiff reported that his medication side effects consisted of dizziness and difficulty thinking clearly. Plaintiff reported that his medications were helpful most of the time, but not always.

Upon evaluation, Dr. Efird noted that Plaintiff was living in a mobile home with his girlfriend on his parent's property.  Dr. Efird noted that the ability to perform basic self-care was adequately endorsed.  Dr. Efird noted Plaintiff had primarily worked doing landscaping and stopped working full-time in July of 2008 due to increased problems with driving, thinking and coping. Plaintiff denied alcohol or substance abuse for the past ten months.  Dr. Efird diagnosed

-4-

Plaintiff with bipolar disorder, most recent episode unspecified, and indicated that a review of medical records might be helpful to clarify the diagnosis.

With regard to adaptive functioning, Plaintiff reported that he could drive in unfamiliar routes, but denied having driven much recently.   Plaintiff reported he was able to shop independently.  Plaintiff reported that he had difficulty keeping track of information.  Dr. Efird noted that Plaintiff was able to perform most activities of daily living.  With regard to social interactions, Plaintiff reported that he primarily spent time with his girlfriend and that he saw his parents daily.  Dr. Efird opined Plaintiff had the capacity to perform basic cognitive tasks for basic work-like activities.   Dr. Efird noted that Plaintiff appeared to track and respond adequately, and no remarkable problems with attention or concentration were noticed.  Dr. Efird noted that Plaintiff generally completed most tasks during the evaluation, but Dr. Efird opined Plaintiff's mental symptoms might impair sustained persistence.  Dr. Efird noted that Plaintiff's mental pace of performance was remarkably slower than expected in comparison to Plaintiff's educational achievement.

On October 28, 2008, Dr. Dan Donahue, a non-examining medical consultant, completed a psychiatric review technique form indicating Plaintiff had moderate restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation. (Tr. 198-211).  Dr. Donahue stated:

> 51-year-old male alleging mental problems.  Claimant does receive outpatient mental health treatment through the VA system.  The last available VA note indicates the following diagnoses: Alcohol dependence, alcohol intoxication at Mission, major depressive disorder, bipolar disorder by history; GAF 65.  A mental status dated October 24, 2008 diagnosed the following: Bipolar Disorder,

-5-

Most Recent Episode Unspecified; GAF 45-55.  Vendor stated that claimant has the capacity to perform basic cognitive tasks required for basic work-like activities.  This claimant appears capable of, at least, unskilled types of work.

(Tr. 210).

On the same date, Dr. Donahue completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others.  (Tr. 212-215).

On February 4, 2009, after reviewing all of the evidence of record, Dr. Jay Rankin affirmed the assessment dated October 24, 2008.  (Tr. 195).

On April 1, 2009, Dr. Stillwell noted Plaintiff complained that his depression was worse; that he had trouble concentrating; and that he was not sleeping well.  (Tr. 453).  Dr. Stillwell noted that Plaintiff decided not to build near his parents, and that he bought a trailer instead.  Dr. Stillwell noted Plaintiff's mental status was calm and clear without evident thought disorder.  Dr. Stillwell noted that Plaintiff had been non-compliant in taking his medication as prescribed.  Plaintiff was prescribed medication and instructed to follow-up in six months.  Plaintiff was also

-6-

instructed to call in a few weeks if his symptoms had not improved. Plaintiff was given a GAF score of 55.

On April 15, 2009, Plaintiff was seen for his six-month follow-up with his primary care physician. (Tr. 444-452). Plaintiff reported that he had no particular complaints. Plaintiff indicated that he was seen in the mental health clinic the previous week for his depression, and claimed everything was okay. Plaintiff reported that since his last visit he had some flare-ups of his bipolar disorder with two manic episodes. Dr. Rhame noted Plaintiff had been seen by Dr. Stillwell and that his medication had been changed. Plaintiff reported that he was somewhat lethargic, but that he was doing better. Plaintiff was instructed to follow-up with Dr. Stillwell regarding his bipolar disorder and to continue his medications.

On May 8, 2009, Plaintiff presented with his girlfriend at the walk-in clinic for admission and assistance with dependence on inhalants. (Tr. 292-293, 305-318, 349-361, 364-443). Plaintiff reported he was previously treated successfully in 2007 in the SAC program. Plaintiff reported he had been inhaling Clean Safe Dust Remover Aerosol for the past three months. Plaintiff reported that when he stopped inhaling, he would get anxious and have a tremor which was then relieved by inhaling again. Plaintiff reported his substance abuse was due to severe depression. Dr. Mohan Kaza noted that Plaintiff's inhalant use had been complicated by an arrest for DUI. Treatment notes indicated that Plaintiff was advised to report adverse medication effects. Plaintiff underwent a CT Scan of the head that was normal. After the detox, Plaintiff reported that his memory was fine, and that he was thinking clearly. Plaintiff was discharged on May 12, 2009, with a diagnosis of Axis 1: inhalant dependence, alcohol dependence, in remission, depression NOS, and a possible organic brain syndrome; and Axis V: discharge GAF

of 45.  Plaintiff reported that he planned on continuing to do yard work for his father and neighbors.

A medical note dated May 13, 2009, indicated that Plaintiff received a phone call from the mental health clinic to check on his status.  (Tr. 348).  Plaintiff reported that he was doing well and feeling better.  Plaintiff reported that he felt that his medications were doing well.

In an Individual Therapy note dated May 19, 2009, Mr. Anthony B. Patterson, LCSW, reported Plaintiff's mood continued to be apathetic, but less depressed.  (Tr. 345-346).  Plaintiff reported that his family was antagonistic of him by criticizing and belittling him.  Plaintiff's goal was to reduce his depression.

In an Individual Therapy note dated May 27, 2009, Mr. Patterson reported that Plaintiff felt anxious depression with racing thoughts and rumination.  (Tr. 344).  Plaintiff reported continued poor sleep.  Plaintiff also reported that he felt ostracized by his family.  Plaintiff received measured breathing training and progressive muscular relaxation.

On June 17, 2009, Plaintiff presented to the mental health clinic for his regular visit and for a follow-up of April 1, 2009.  (Tr. 339).  Plaintiff reported that he could not work.  Treatment notes indicated that Plaintiff was admitted for inhalant abuse in May of 2009, and that Plaintiff reported that he was "better now."  Dr. Stillwell noted Plaintiff's mental status was calm and clear without evident thought disorder.  Dr. Stillwell noted that Plaintiff had been non-compliant with his medication.  Plaintiff was prescribed medication and instructed to return in six months.

In an Individual Therapy note dated June 17, 2009, Mr. Patterson reported that Plaintiff presented subjectively less depressed than last session.  (Tr. 341).  Plaintiff reported he was getting six hours of "better" sleep each night, and that he had been very busy tending the family's

-8-

farm daily.  Plaintiff reported that he continued to be completely isolated from peers, with the exception of family members and his girlfriend.  Mr. Patterson noted that Plaintiff objectively appeared to be depressed.  Plaintiff set a goal to attend one caving event, or to at least utilize the contact information that he had for a member of the caving group.

Notes dated July 10, 2009, reported that Plaintiff did not show up for his individual therapy appointment with Mr. Patterson.  (Tr. 337).

On August 4, 2009, Plaintiff sought emergency treatment for chest pain.  (Tr. 331-336). Plaintiff underwent chest x-rays that revealed a stable chest without change from April 2, 2008. (Tr. 292). Plaintiff indicated he had been sad or depressed most of the time for the past two weeks.  (Tr. 334). Plaintiff was diagnosed with atypical chest pain, probably chest wall pain related to costochondritis/chest wall pain.  Plaintiff was instructed to take Naproxen twice a day with meals, and to follow up with his primary care doctor if the pain continued.

An Individual Therapy note dated August 12, 2009, reported that Plaintiff's mood had been stable to more euthymic since his last session.  (Tr. 330).  Plaintiff processed his continued reluctance to seeking interactions in the community.  Plaintiff set a goal to go to a "river cleanup day" in the coming month.

On September 9, 2009, Plaintiff was seen in the mental health clinic. (Tr. 327).  Mr. Patterson noted that Plaintiff's mood/affect was depressive/constricted.  Plaintiff's cognitive function was noted as grossly within normal limits.  Plaintiff reported that he had gone on a canoe trip the previous weekend with a relative.  Plaintiff stated that it was enjoyable and caused him to consider looking for hiking partners through the internet hiking forum.  Plaintiff reported that sleep continued to be an issue.  Plaintiff indicated that he had some increased optimism and

-9-

motivation. Plaintiff was to continue with his previous treatment plan.  Mr. Patterson opined Plaintiff's GAF was 60.

On October 6, 2009, Plaintiff came in for a six-month follow-up and annual physical. (Tr. 321-326).  Plaintiff reported some left shoulder pain that did not bother him at night; some right knee pain that was doing okay; and that he was not having much of a problem with the bursitis in his hips.  Plaintiff had lost fifteen pounds.  Plaintiff reported that his bipolar disorder seemed to be doing okay.  Nurse Nelson A. Seal, RN, noted that Plaintiff denied depression at that time.  (Tr. 325).  Plaintiff's medications were refilled and Plaintiff was to return in six months.

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

-10-

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

-11-

A.      **Subjective Complaints and Credibility Analysis:**

With regard to Plaintiff's subjective complaints, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties, that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

The record established that Plaintiff had been diagnosed with bipolar disorder and that Plaintiff sought treatment for depression.  In September of 2008, Dr. Stillwell noted that Plaintiff had tried to skip taking his sleeping medication which had resulted in Plaintiff experiencing poor sleep.  At that time, Plaintiff reported that he had been taking Prozac which had helped, but he had run out of the medication in June.  The ALJ properly noted that when Plaintiff took his medication as prescribed, Plaintiff experienced positive results.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (impairments amenable to treatment are not disabling).  In October of 2008, Plaintiff reported to Dr. Efird that his medication side effects consisted of dizziness and

-12-

difficulty thinking clearly and that the medication was helpful most of the time.  After evaluating Plaintiff, Dr. Efird noted that Plaintiff could drive, shop independently and perform most activities of daily living.  It is noteworthy that in April of 2009, when Plaintiff reported that his depression was worse and that he had trouble concentrating, Dr. Stillwell reported that Plaintiff had been non-compliant with his medication.  Plaintiff again had problems in May of 2009, but the medical evidence showed that Plaintiff had been abusing inhalants for the past three months.  Once Plaintiff stopped abusing inhalants, and started back on his medication, the record revealed that Plaintiff indicated that his bipolar disorder was doing okay.

As for the side effects to his medication, with the exception of the one time he told Dr. Efird that he was experiencing side effects, there was no evidence revealing that Plaintiff reported experiencing side effects to his treating physicians.  Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (claimant did not complain to doctors that her pain medication made concentration difficult).  In fact, in May of 2009, the medical evidence indicated that Plaintiff was advised to report adverse medication effects, and the record failed to show Plaintiff reported any side effects.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities.  The record revealed that during the relevant time period, Plaintiff helped his father build a garage, and that he mowed lawns for his parents and his neighbors.  (Tr. 351).  Plaintiff also reported in a Function Report dated August 24, 2008 (Tr. 159-166), that he could take care of his personal needs; that he could garden and help take care of his parents' two cows; that he could do most household chores; that he could go out independently, but did not do so often, and shop for food and household items; and that he watched television, took pictures, and went

-13-

caving and hiking.  Cf. Gray v. Apfel, 192 F.3d 799, 804 (8th Cir. 1999) (plaintiff's ability to care for himself, do household chores, drive a car short distances, and perform other miscellaneous activities was inconsistent with his subjective complaints).  Furthermore, in September of 2009, Plaintiff reported to his counselor that he had gone on a canoe trip with a relative, and that because the outing was so enjoyable he was considering looking for hiking partners on a hiking forum

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity.  Even considered in combination, neither the medical evidence nor the reports concerning his daily activities support Plaintiff's contention of total disability.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.      RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.

-14-

Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ found Plaintiff retained the RFC to perform work at all exertional levels where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables, with little judgement and the supervision required was simple, direct and concrete.  In making this determination, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records.  The medical evidence revealed that in October of 2008, Dr. Efird noted Plaintiff might have some impairment with sustained persistence, and that Plaintiff's pace was slower than expected given Plaintiff's education.  However, Dr. Efird also noted that Plaintiff tracked and responded adequately, and that no remarkable problems with attention or concentration were noticed.  Dr. Efird opined that Plaintiff was able to perform basic cognitive tasks for basic work-like activities.  In October of 2008, Dr. Donahue, a non-examining medical consultant, also opined that Plaintiff was "capable of, at least, unskilled types of work."

The record also revealed that Dr. Stillwell, Plaintiff's treating psychiatrist, opined that Plaintiff maintained a GAF score of 55 in April of 2009; and subsequent to Plaintiff's inhalant abuse detox, Dr. Stillwell assessed Plaintiff with a GAF score of 55 in June of 2009.  The Court notes that GAF scores of 51 to 60 have been associated with only moderate impairment in occupational functioning.  Martie v. Astrue, 641 F.3d 909, 919 (8th Cir. 2011)(according to the Diagnostic and Statistical Manual of Mental Disorders (DSM–IV), a GAF of 51 to 60 indicates moderate symptoms)(citations omitted).  Furthermore, in September of 2009, Plaintiff's counselor opined Plaintiff's GAF score was 60.

-15-

AO72A
(Rev. 8/82)

The record further shows that during the relevant time period, Plaintiff was able to maintain a relationship with his girlfriend and, as noted above, that Plaintiff was able to help his father build a garage; mow lawns for his parents and neighbors; go on a canoe trip with a relative; and was planning on finding a friend to hike with through the hiking forums.  Based on our above discussion of the medical evidence and Plaintiff's activities, the Court finds substantial evidence of record to support the ALJ's RFC determination.

### C.       Hypothetical Question to the Vocational Expert:

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy.  We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  See Long v. Cater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Cater, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled as he is able to perform work as a production worker, a maid/housekeeper, and a packer.  See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### D.       Veteran's Administration Disability Rating:

Finally, in making the disability determination, the ALJ acknowledged Plaintiff had been rated a seventy percent service-connected disability for his depression.  The ALJ should consider the VA's finding of disability, Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir.1998), but the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits, 20 C.F.R. § 404.1504; Fisher v. Shalala, 41

-16-

F.3d 1261, 1262 (8th Cir.1994) (per curiam) ("There is no support for [the claimant]'s contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards.").  Based on the above, we find the ALJ properly addressed the VA's disability rating.

**V.**     **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 6th day of March 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-17-

AO72A
(Rev. 8/82)